**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JAMIA M. GEER, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:16-cv-00542-GMN-NJK |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| NANCY A. BERRYHILL, ) | (Docket Nos. 29, 33) |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Title II and Title XVI of the Social Security Act. The Court has considered Plaintiff's motion for reversal and/or remand, the Commissioner's cross-motion to affirm, the Commissioner's response to Plaintiff's motion, and Plaintiff's reply. Docket Nos. 29, 33, 34, 40. This action was referred to the undersigned magistrate judge for a report of findings and recommendation.

**I.   STANDARDS**

   A.   Judicial Standard of Review

The Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the

judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are deemed conclusive if supported by substantial evidence. *Id.* To that end, the Court must uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *See, e.g., Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining whether the Commissioner's findings are supported by substantial evidence, the Court reviews the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

Under the substantial evidence test, the Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Consequently, the issue before this Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so that the Court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See, e.g., Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

//

//

//

B.      Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. § 404.1520(a)(4). The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. § 404.1521; Social Security Rulings ("SSRs") 85-28 and 96-3p.[1] If the individual does not have a severe

---

[1] SSRs constitute the Social Security Administration's ("SSA") official interpretations of the statute it administers and its regulations. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1224.

medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement, 20 C.F.R. § 404.1509, then a finding of disabled is made, 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; SSRs 96-4p, 96-7p. To the extent that statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

The fourth step requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and perform at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565. If the individual has the RFC to perform his past work, then a finding of not disabled is made.

If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II. BACKGROUND

### A. Procedural History

On July 6, 2010, Plaintiff filed an application for disability insurance benefits and supplemental security income alleging a disability onset date of February 26, 2006. Administrative Record ("A.R.") 251-264). Plaintiff's claims were denied initially on September 14, 2010, and upon reconsideration on March 9, 2011. A.R. 115-124, 133-139. On March 18, 2011, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R. 142-143. On January 10, 2012, Plaintiff, Plaintiff's attorney, and a vocational expert appeared for a hearing before ALJ David K. Gatto. A.R. 57-79. On January 27, 2012, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability from February 26, 2006, through the date of the decision. A.R. 92-109. On April 15, 2013, the Appeals Council granted Plaintiff's request for review and remanded Plaintiff's claim to the ALJ. A.R. 110-113. On October 23, 2013, Plaintiff, Plaintiff's attorney, and a vocational expert appeared for a second hearing before ALJ Gatto. A.R. 37-56. On April 24, 2014, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability from February 26, 2006, through the date of the decision. A.R. 17-28. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for second review on January 5, 2016. A.R. 1-5. On March 31, 2016, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Docket No. 3.

//

B.   The ALJ's Decision

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520, and issued an unfavorable decision on April 24, 2014. A.R. 17-28. At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2010 and has not engaged in substantial gainful activity since February 26, 2006. A.R. 19. At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus; history of chronic pain, status-post surgeries for degenerative disc disease of the cervical and lumbar spines; history of migraine headaches; degenerative changes of the right shoulder, status-post SLAP tear repair in 2008; mild degenerative changes in the left shoulder; and obesity. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 20-21. The ALJ found that Plaintiff has the RFC to

> perform light work as defined by 20 CFR 404.1567(b) and 416.967(b) except that she is limited to frequent climbing of stairs and ramps, balancing, stopping, kneeling, crouching, but no crawling or climbing of ladders, ropes or scaffolds. She is also limited to occasional reaching overhead, bilaterally; and, to occasional exposure to temperature extremes, but no exposure to workplace hazards (eg., heights and dangerous moving machinery).

A.R. 21. At step four, the ALJ found that Plaintiff is able to perform past relevant work. A.R. 26. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and RFC. A.R. 27. In doing so, the ALJ defined Plaintiff, age 36, as a younger individual age 18-49 at the time of the alleged disability onset date, with at least a high school education and able to communicate in English. *Id.* Although the ALJ found that Plaintiff is capable of performing her past relevant work, he additionally found that other jobs exist in the national economy that Plaintiff is able to perform. *Id.* The ALJ considered Medical Vocational Rules, which provide a framework for finding Plaintiff not disabled, along with vocational expert testimony that an individual with the same RFC and vocational factors can perform work as a ticket taker, mail clerk, and parking lot attendant. *Id.* The ALJ, therefore, found that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id*.

Based on all of these findings, the ALJ found Plaintiff not disabled and denied the application for a period of disability and disability insurance benefits. A.R. 28.

### III.  ANALYSIS AND FINDINGS

On appeal, Plaintiff makes eight arguments. First, Plaintiff argues that the ALJ did not comply with the Appeals Council's order to consider Plaintiff's side effects from her medication and new evidence of Plaintiff's prescriptions and migraines. Docket No. 29 at 2-3, 5-6. Second, Plaintiff argues that the ALJ should have obtained a medical advisor to review the new medical records. *Id.* at 3-4. Third, Plaintiff argues that the ALJ improperly gave no weight to Dr. Sanghamitra Basu's opinion. *Id.* at 8. Fourth, Plaintiff argues that the ALJ improperly gave no weight to Dr. Ryan Kissling's opinion. *Id.* at 4-5. Fifth, Plaintiff argues that the ALJ improperly gave no weight to her roommate JoAnne Nikitas' opinion. *Id.* at 4-5. Sixth, Plaintiff argues that the ALJ failed to specify the extent to which obesity exacerbates her impairments. *Id.* at 10. Seventh, Plaintiff argues that the ALJ failed to address the effects of her asthma and sleep apnea. *Id.* at 11. Lastly, Plaintiff argues that the ALJ improperly found her not fully credible based on her testimony and online-school records. *Id.* at 11-12. The Court will address each of these arguments in turn below.

####    A.    Failure to Comply with the Appeals Council's Order

On remand, the Appeals Council ordered the ALJ to consider, *inter alia*, new evidence submitted as part of the record. A.R. 112. The parties submit differing positions as to whether the ALJ complied with the order of the Appeals Council.

#####        i.    Prescription Records and Side Effects of Medications

Plaintiff contends that the ALJ did not consider new prescription records or the side effects of her medications. Docket No. 29 at 2. Plaintiff further submits that the ALJ failed to consider her "persistent" efforts to obtain pain relief over the past eight or so years. *Id*. at 6-7. Additionally, Plaintiff submits that her medications cause side effects of "drowsiness, fatigue, nausea, headache, neurological issues, hallucinations[,] memory loss[,] and dizziness/vertigo." *Id*. at 7. These side effects, Plaintiff contends, impact her ability to work. *Id*.

The Commissioner submits that the ALJ fully complied with the Appeals Council's order. Docket No. 33 at 3. The Commissioner submits that, in her 2013 hearing on remand, Plaintiff "made

no mention of current side effects resulting from medications," that "drowsiness and dizziness" were the only side effects she mentioned in her original application, and, because the ALJ "properly rejected Plaintiff's testimony as inconsistent with the record, the ALJ did not err in not addressing these allegations." *Id*. Further, the Commissioner submits that, in her only medical record specifically addressing side effects of medications, Plaintiff denied having them. *Id*. Additionally, though Plaintiff discussed some side effects in questionnaires, the Commissioner submits that these were inconsistent with her hearing testimony. *Id*. Further, the Commissioner submits that, since the ALJ "properly rejected Plaintiff's testimony as inconsistent with the record," the ALJ did not err in failing to explicitly address her side effect claims. *Id*. Finally, the Commissioner submits that Plaintiff's testimony of her side effects at the first hearing on January 12, 2012 conflicted with Ms. Nikitas' affidavit and, therefore, was discredited. *Id.*

The prescription records list the various prescriptions Plaintiff has taken over the years. A.R. 358-372. Plaintiff, however, fails to indicate whether or not these prescriptions are mentioned elsewhere in the record. The Court does not compare each and every prescription listed in A.R. 358-415 to all prescriptions mentioned elsewhere in the record to discern whether or not the prescriptions are in fact new evidence or merely presented in a new format. No meaningful argument is provided as to how the lack of specifying new prescriptions in the ALJ's decision demonstrate error by the ALJ, and any such argument is therefore deemed waived. *See, e.g.*, *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996).

Further, regarding the medication side effects, Plaintiff asks the Court to interpret the record in a different way than the ALJ. It is for the ALJ, however, to evaluate the record before him and make reasonable conclusions therefrom. *See, e.g.*, *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld"). Simply pointing to some potentially contrary evidence in the record does not suffice to show that an ALJ's decision is not supported by substantial evidence. *Cf. Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017). *See also Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (dismissing the plaintiff's allegations of medication side effects, in part, because the ALJ properly discredited the plaintiff's

credibility generally). While Plaintiff would have preferred the ALJ interpret the record differently, she has failed to show that the ALJ was required to do so.

### ii. Migraine Headaches

Plaintiff contends that the ALJ failed to consider her visits to a migraine specialist, as well as her "extensive" list of prescriptions, many of which are "specifically for migraine headaches." Docket No. 29 at 6. Plaintiff further submits that, if she had only mentioned having sporadic migraines, she would not been prescribed medication to treat them. *Id*. Finally, Plaintiff submits that she "consistently" mentions migraines when she completes intake forms at doctor appointments. *Id*.

The Commissioner submits that the ALJ's decision notes that Plaintiff has a history of migraine headaches. Docket No. 33 at 4. The ALJ noted that Plaintiff alleged suffering from migraines that could last up to 72 hours two to three times per week, but found that "the objective medical record documents only sporadic reports of migraines or headache symptoms." *Id*. (citing AR 23). The Commissioner submits that inconsistencies between Plaintiff's allegations "and the medical record are valid reasons to discount her testimony." *Id*.

The Court finds that the record supports the ALJ's finding that the objective medical record demonstrates sporadic headaches. *See* A.R. 533 ("experiences some migraines"), 734 ("[experiences] migraine headaches"), 762 ("migraine [headaches] still occur on daily, every-other day basis, possible [decrease in] intensity"), 763 ("increase headaches..."), 764 ("frequent migraine [headaches] 3-4x month...frequent, disabling & multiple subtypes"), 776 ("[increase headaches]- not relieved by ibuprofen...one migraine per month"), 778 ("generalized mild headaches"), 793 ("migraine[s]...occurring at least once a week"), 1123 ("headaches have been bad"), 1163 ("occurring on a continuous daily basis...severe headaches lasting three days every month), 1167 ("daily headaches...severe headaches once a week"), 1168 ("persistent daily headaches...several migraines per week"), 1169 ("several headaches per week...two severe migraine headaches per month"), 1170 ("headaches have been ongoing for several days"), 1171 ("several severe headaches per month...daily headaches have improved"), 1173 ("several migraine headaches per week"), 1174 ("daily headaches"), 1178 ("headaches typically last 3 days and occur 5+ times per year).

The Court notes that some of the records, which are reliant upon Plaintiff's self-reporting, appear to show more frequent headaches (though rarely frequent migraines), it is within the ALJ's discretion to determine credibility. The ALJ determined that Plaintiff lacks credibility, which gives him reason to discount her self-reporting. *See Thomas*, 278 F.3d at 960. Further, as stated above, it is for the ALJ, however, to evaluate the record before him and make reasonable conclusions therefrom. *See, e.g.*, *Burch*, 400 F.3d at 679. Where, as here, Plaintiff points to some potentially contrary self-reported medical documents in the record, such documents do not suffice to show that an ALJ's decision is not supported by substantial evidence. *Cf. Shaibi*, 883 F.3d at 1108. (dismissing the plaintiff's allegations of medication side effects, in part, because the ALJ properly discredited the plaintiff's credibility generally). While Plaintiff would have preferred the ALJ interpret the record regarding her migraine headaches differently, she has failed to show that the ALJ was required to do so.

### B.  Medical Advisor

Plaintiff contends that the ALJ erred in not obtaining a medical advisor as required by SSR 96-6p given "the voluminous new medical evidence added to the record" and "the complicated medical issues involved." Docket No. 29 at 3. The Commissioner submits that the ALJ was not obligated to call a medical advisor because SSR 96-6p is "permissive and not mandatory." Docket No. 34 at 11. The Commissioner further submits that Plaintiff failed to meet her burden of proof to "establish whether she has an impairment(s) that meets or equals a listing under appendix 1." *Id.*

SSR 96-6p states, in relevant part, that ". . . an administrative law judge . . . must obtain an updated medical opinion from a medical expert . . . when additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical . . . consultant's finding that the impariment(s) is not equivalent in severity to any impairment in the Listing of Impairments." The decision to obtain an updated medical opinion from a medical expert regarding new evidence is within the discretion of the ALJ. *See Harris v. Colvin*, 584 Fed. App'x 526, 528 (9th Cir. 2014); *see also U'Ren v. Apfel*, 2000 U.S. App. LEXIS 31192, at *6-7 (9th Cir. 2000).

The state agency physicians, Dr. Wenceslao Cabaluna and Dr. Navdeep S. Dhaliwal, conducted physical examinations of Plaintiff. A.R. 793-802, 835-842. Moreover, Dr. Cabaluna had already considered Plaintiff's history of migraines and headaches, including that Plaintiff experienced migraines

at least once a week. A.R. 793. The Court finds that the ALJ was within his discretion to determine that the new evidence would not change Dr. Cabaluna's or Dr. Dhaliwal's finding and to not obtain an updated medical opinion from a medical expert on the new evidence.

### C. Assessing Dr. Basu's Opinion

Plaintiff contends that the ALJ erred by giving Dr. Basu's opinion no weight as her treating physician. Docket No. 29 at 8. The Commissioner submits that the ALJ properly gave no weight to Dr. Basu's opinion because Dr. Basu speculated about Plaintiff's limitations prior to treating her and the limitations identified by Dr. Basu "were extreme and inconsistent with the medical record." Docket No. 33 at 5. The Commissioner further submits that the ALJ properly discounted Dr. Basu's opinion because, as a pain management doctor, Dr. Basu's treatment was based on subjective reports from Plaintiff and, further, was not supported by the opinion of "an orthopedic doctor or internist." *Id.*

The ALJ provides three reasons for giving Dr. Basu's opinion no weight. A.R. 24-25. The first reason is because Dr. Basu found that Plaintiff had been unable to sustain full-time work since February 26, 2006, despite the fact that Dr. Basu began treating Plaintiff more than two years later, in August 2009. A.R. 24; *see also* A.R. 1140. The ALJ found that, by providing an opinion based, in part, on a time period that Dr. Basu "had no contact with the [Plaintiff]," Dr. Basu was more akin to "a patient advocate, rather than...an objective medical observer." A.R. 24. The Ninth Circuit has found that retrospective opinions may be rejected as speculative, especially when contemporaneous medical evidence does not support the opinion. *See Coaty v. Colvin*, 673 Fed. App'x 787, 787-788 (9th Cir. 2017).

The second reason the ALJ provides for giving Dr. Basu's opinion no weight is because "the relatively mild findings on x-rays, MRIs, and physical examinations, the claimant's relatively routine and conservative course of treatment after her surgeries" do not support Dr. Basu's opinion of Plaintiff's "extreme" limitation that Plaintiff has been unable to sustain full-time employment since February 26, 2006. A.R. 24, 1140. The ALJ discusses in detail the mild findings of Plaintiff's x-rays, MRIs, and physical examinations. A.R. 22-23 (internal citations omitted). Additionally, the ALJ discusses that Dr. Basu's opinion conflicted with Plaintiff's overall conservative treatment, such as injections and physical therapy as opposed to surgery, which further discredited Dr. Basu's opinion. A.R. 24 (internal citations

omitted). A doctor's opinion may be discounted or offered no weight if it is inconsistent with the medical record as a whole. *See e.g.*, *Valentine v. Comm'r SSA*, 574 F.3d 685, 692-693 (9th Cir. 2009) (finding that an ALJ may discredit the treating physician's opinion if it is contradicted by evidence in the record).

The third reason the ALJ provides for giving Dr. Basu's opinion no weight is because, as a pain management doctor, Dr. Basu's treatments are based on a patient's subjective symptoms rather than objective medical analysis. A.R. 24-25. An ALJ may discredit or reject a doctor's opinion which the ALJ determines to be based on the plaintiff's subjective symptoms, as opposed to objective medical evidence. *See Buapha v. Berryhill*, 2018 U.S. Dist. LEXIS 26198, at *20-23 (D. Nev. Jan. 12, 2018). In the instant case, the ALJ cites to the forms and letters submitted by Dr. Basu to support his finding. A.R. 24 (internal citations omitted). Moreover, additional records from Dr. Basu offer substantial evidence that treatment was based on Plaintiff's subjective symptoms, rather than objective findings. A.R. 1116-1136. Therefore, the Court finds that the ALJ's reasons for giving Dr. Basu's opinion no weight are supported by substantial evidence.

### D. Assessing Dr. Kissling's Opinion

Plaintiff contends that the ALJ erred by giving Dr. Kissling's opinion no weight as her chiropractor. Docket No. 29 at 4. The Commissioner submits that the ALJ properly gave no weight to Dr. Kissling's opinion because chiropractors are an unacceptable medical source and because Dr. Kissling's opinion was not supported by the objective medical evidence. Docket No. 33 at 8.

The ALJ provides two reasons for giving Dr. Kissling's opinion no weight. A.R. 25. The first reason is because, as a chiropractor, Dr. Kissling's opinion is not considered a medically acceptable source. *Id.* Chiropractors are not considered acceptable medical sources but, instead, "other sources." *See* 20 C.F.R. 404.1513(a); *see e.g.*, *Helmke v. Astrue*, 371 Fed. App'x 748, 749 (9th Cir. 2010). As an "other source," a chiropractor's opinion may be used to show the severity of impairments but cannot be used to establish an impairment and is not afforded the same weight as the opinion of a physician or an acceptable medical source. *See Blodgett v. Comm'r of SSA*, 534 Fed. App'x, 608, 609 (9th Cir. 2013); *see e.g.*, *Naji v. Barnhart*, 2004 U.S. Dist. LEXIS 25196, at *27, n.7 (N.D. Cal. Dec. 9, 2004). Nonetheless, an ALJ must consider a chiropractor's opinion. *See Simpson v. Colvin*, 2017 U.S. Dist.

LEXIS 214233, at *27-28 (D. Nev. Dec. 12, 2017); *see also de Alvarez v. Colvin*, 2016 U.S. Dist. LEXIS 136263, at *16 (C.D. Cal. Sept. 30, 2016). If the ALJ rejects the opinion from an "other source," he must provide a germane reason. *See Blodgett*, 534 Fed. App'x at 609.

The second reason the ALJ provides for giving Dr. Kissling's opinion no weight is because "his opinion, like that of Dr. Basu, is not supported by the objective medical evidence, the relatively mild findings on x-rays, MRIs, and physical examinations..." A.R. 25. The ALJ discusses in detail the mild findings of Plaintiff's x-rays, MRIs, and physical examinations. A.R. 22-23 (internal citations omitted). The Court therefore finds that the ALJ provided germane reasons for giving Dr. Kissling's opinion no weight.

E.  Assessing Ms. Nikitas' Opinion

Plaintiff contends that the ALJ erred in giving Ms. Nikitas' affidavit no weight. Docket No. 29 at 4. The Commissioner submits that the ALJ properly gave Ms. Nikitas' affidavit no weight because she was not a disinterested witness and her testimony was similar to Plaintiff's testimony, which the ALJ properly discounted. Docket No. 33 at 8-9.

The ALJ provides two reasons for giving Ms. Nikitas' affidavit no weight. A.R. 26. The first reason is because, given Ms. Nikitas' "personal relationship as a friend and roommate of the claimant, she cannot be considered a disinterested third party witness, whose statement would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." A.R. 26. A non-medical source's opinion may be given weight when the ALJ finds the individual to be an unbiased party. *See Elia v. Comm'r of SSA*, 2017 U.S. Dist. LEXIS 43364, at *20-21 (D. Ariz. Mar. 24, 2017) (finding no reversible error when the ALJ gave a teacher's opinion greater weight than medical opinion because "'the teacher is an unbiased party and saw the claimant on a daily basis...'"). If the ALJ rejects the opinion from an "other source," he or she must provide a germane reason. *See Blodgett*, 534 Fed. App'x at 609. The Court finds that the ALJ provided a germane reason for rejecting Ms. Nikitas' affidavit as biased based on her relationship with Plaintiff. A.R. 26, 346-357, 416-417.

The second reason the ALJ provides for giving Ms. Nikitas' opinion no weight is because her opinions were similar to Plaintiff's testimony regarding her impairments, which the ALJ discredited. A.R. 26. The Court finds the ALJ's reasons for giving Ms. Nikitas' affidavit no weight are germane.

F. Effect of Obesity

Plaintiff contends that the ALJ failed to specify the extent Plaintiff's obesity limited her RFC. Docket No. 29 at 10. Plaintiff submits that the ALJ should have accounted "for the fact that while [her] obesity may not be a limitation in and of itself, it could be a contributing factor in her complaints of pain and other symptoms." *Id.* The Commissioner submits that the ALJ properly discounted Plaintiff's obesity because he considered Plaintiff's height, weight, and body mass index ("BMI") and found that her obesity was consistent with the RFC assessment. Docket No. 33 at 6.

The medical records do not show that Plaintiff's obesity is a limitation itself or a contributing factor to her pain and other symptoms. A.R. 22. The ALJ considered the available information regarding Plaintiff's obesity (Plaintiff's height, weight, and BMI) and found that her RFC "more than accommodates for any limitations which might result from her obesity." A.R. 22; *see also Robinson v. Colvin*, 2014 U.S. Dist. LEXIS 120235, at 13-18 (D. Nev. Aug. 13, 2014) (upholding the ALJ's finding that the plaintiff's obesity was not a severe impairment because none of the plaintiff's medical advisors mentioned the plaintiff's obesity or any functional limitation due to obesity). Moreover, SSR 02-01p does not require the ALJ to consider any functional limitations from obesity unless obesity is found to be a medically determinable impairment. *Id.* at *16 (citing SSR 02-01p). Therefore, the Court finds that the ALJ adequately considered Plaintiff's obesity and its effect on her RFC.

G. Discussion of Asthma and Sleep Apnea

Plaintiff contends that the ALJ failed to address the effects of her asthma and sleep apnea. Docket No. 29 at 10-11. Plaintiff submits that she tested positive for sleep apnea and that she suffered from asthma and frequent coughs that impaired her ability to sleep. *Id.* Although the ALJ failed to address Plaintiff's asthma and sleep apnea, the Commissioner submits that any omission was harmless error. Docket No. 33 at 9. Plaintiff was diagnosed with "mild obstructive sleep apnea," for which treatment was not recommended. A.R. 710. Moreover, the medical records do not indicate that Plaintiff's asthma limited her RFC. The Court finds that the ALJ's failure to address Plaintiff's asthma

and sleep apnea was, therefore, harmless error. *See e.g.*, *Molina v. Astrue*, 674 F.3d 1104, 1115-1116 (9th Cir. 2012) (applying the harmless error principle in the Social Security context when it can be concluded "from the record that the ALJ would have reached the same result absent the error").

### H. Plaintiff's Credibility

Plaintiff contends that the ALJ improperly based his credibility finding on her online schooling records. Docket No. 29 at 11. The Commissioner submits that the ALJ properly discounted Plaintiff's testimony because of inconsistencies between her testimony of her disabling pain and her online schooling. Docket No. 33 at 8.

In determining a claimant's credibility, an ALJ must determine if the objective medical evidence could reasonably be expected to produce claimant's alleged symptoms. *See Molina*, 674 F.3d at 1112-1113. Otherwise, an ALJ must provide "clear and convincing reasons" for discrediting the claimant's credibility. *Id.*; *see also Beatty v. Colvin*, 2015 U.S. Dist. LEXIS 180689, at *42-44 (D. Nev. Dec. 20, 2015). Inconsistencies between the claimant's testimony or inconsistencies between claimant's testimony and conduct or activities may constitute clear and convincing reasons. *See Lawrence v. Colvin*, 2016 U.S. Dist. LEXIS 48353, at *27-29 (D. Nev. Feb. 11, 2016); *see also Beatty*, 2015 U.S. Dist. LEXIS 180689, at *42-44. The Ninth Circuit, however, cautions ALJs in concluding that conduct or "daily activities are inconsistent with testimony about pain" because impairments that may preclude work are often "consistent with doing more than merely resting in bed all day." *Lawrence*, 2016 U.S. Dist. LEXIS 48353, at *27-29.

In the instant case, the ALJ found that Plaintiff's testimony regarding her limitations were inconsistent with the level of course work she claimed to be enrolled in. A.R. 25. The ALJ further found that Plaintiff's testimony conflicted with computer log-in records, which the ALJ believed showed that Plaintiff "often stays logged on for more than an hour at a time." *Id.*; *see also* A.R. 348-350. The ALJ did not believe that online course work through an accredited state university could be completed in an hour and one-half per day, as Plaintiff testified.[2] *Id.* Plaintiff submits that, although she was

---

[2] The Commissioner submits that "inconsistencies in Plaintiff's testimony and daily and [sic] school activities was a valid reason for discounting disabling symptom testimony." Docket No. 33 at 8. In support,

enrolled as a full time online student, some of her classes consisted solely of short quizzes and, further, taking online classes did not require her to attend lectures in person. A.R. 42, 71, 418-485. Plaintiff submits that her computer log-in records reflected longer times because she would sometimes forget to log-off her computer. A.R. 42.

Although the computer log-in records do not conflict with Plaintiff's testimony such that they provide clear and convincing reasons to discredit Plaintiff's testimony, such an error is harmless because the Court finds that the ALJ provides others reasons that Plaintiff's testimony is unsupported by the objective medical evidence to discredit her testimony. *See Molina*, 674 F.3d at 1115-116.

The ALJ provides three other reasons for discrediting Plaintiff's credibility. A.R. 22-26; *see also* Docket No. 34 at 6-8. The first reason the ALJ provides is that Plaintiff's testimony regarding "chronic neck, shoulder and low back pain, associated with a history of migraine headaches," is contradicted by objective medical records of x-rays that were unremarkable and MRIs that were unremarkable "with the exception of a small disc herniation." A.R. 22-23 (internal citations omitted); *see also* Docket No. 34 at 6-7. The Court finds that the ALJ's first reason is sufficient to discredit Plaintiff's credibility.

The second reason the ALJ provides is because Plaintiff's testimony that she "experiences 2-3 migraines a week, lasting 72 hours each," is contradicted by the objective medical records, which indicate "only sporadic reports of migraines and headache symptoms." A.R. 23 (internal citations omitted); *see also* Docket No. 34 at 7. The Court finds this reason is also sufficient to discredit Plaintiff's credibility.

The third reason the ALJ provides in discrediting Plaintiff's credibility, which is more substantively articulated by the Commissioner, is because Plaintiff's testimony of her disability due to diabetes was contradicted by objective medical records, which indicated that her diabetes was controlled with medication. A.R. 22 (internal citations omitted); *see also* Docket No. 34 at 6  In addition to

---

the Commissioner cites to *Matthews v. Shalala*, where the ALJ rejected the claimant's alleged inability to work because claimant attended school three days a week. *Id*; *see also* 10 F.3d 678, 679-680 (9th Cir. 1993). This case does not support the Commissioner's argument for two reasons: (1) the Court found that the ALJ's findings were supported by substantial evidence due to an examining physician's opinion, not because of the claimant's school attendance and (2) even if the holding was based on the claimant's attendance, the claimant in *Matthews* appears to have been attending classes in person, not online.

contradicting objective medical records, an ALJ may also discredit a claimant's testimony if a claimant's symptoms are properly controlled or treated. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Pitts v. Colvin*, 2014 US. Dist. LEXIS 63142, at *25-26 (Jan. 30, 2014). The Court, therefore, also finds this reason sufficient to discredit Plaintiff's testimony. The Court finds that the ALJ did not err in discrediting Plaintiff's testimony.

## IV. CONCLUSION

Based on the forgoing, the undersigned hereby **RECOMMENDS** that Plaintiff's motion for reversal and/or remand (Docket No. 29) be **DENIED** and that Defendant's cross-motion to affirm (Docket No. 33) be **GRANTED**.

IT IS SO ORDERED.

DATED: April 9, 2018.

_____
NANCY J. KOPPE
United States Magistrate Judge

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).